UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
                                      :

MAERSK LINE A/S,                     :

                                        :

                  Plaintiff,          :                 19 Civ. 4870 (JPC)

                                        :

           -v-                     :           OPINION AND ORDER

                                        :

MARIE S. CAREW, *trading as* HOLIDAY SHIPPING,    :

                                        :

                  Defendant.       :

                                        :
------------------------------------------------------------------------ X

JOHN P. CRONAN, United States District Judge:

    Defendant Marie S. Carew ("Carew") does business under the name of her sole proprietorship, Holiday Shipping, an ocean-transportation intermediary based out of Georgia. From approximately 2015 through 2018, Carew entered into various agreements with Plaintiff Maersk Line A/S, an international shipping carrier, to transport her clients' goods from the United States to Africa. Maersk has sued Carew to recover charges for the carriage that were incurred and invoiced, but allegedly not paid.[1] Both parties have now filed motions. Carew moves to

---

[1] Maersk appears to sue Carew individually, although Carew is named as "trading as" Holiday Shipping, the entity that entered into the relevant contracts with Maersk. Whether properly characterized as an individual or an entity, the defendant is proceeding *pro se*, as no attorney has appeared on behalf of the defendant on the docket or has sought *pro hac vice* admission. As the Court indicated in a prior Order in this case, because a sole proprietorship and its owner are the same legal entity, Holiday Shipping may proceed without counsel in this litigation. *Maersk Line A/S v. Marie S. Carew*, No. 19 Civ. 4870 (JPC), 2021 WL 431242, at *1 n.1 (S.D.N.Y. Feb. 8, 2021); *see Oberstein v. SunPower Corp.*, No. 07 Civ. 1155 (JFB), 2008 WL 630073, at *3 (E.D.N.Y. Mar. 5, 2008) (collecting cases permitting a sole proprietorship to proceed *pro se*).

    However, while Carew is technically *pro se*, she has signed multiple filings in connection with the pending motions as being "[a]ssisted" by Yinka Omole, an attorney who is "[n]ot licensed to practice law in New York." *See* Dkt. 67 ("Deft. Motion") at 12; Dkt. 71 ("Deft. Reply") at 3;

dismiss or transfer, arguing primarily improper venue and *forum non conveniens*.  Maersk moves for summary judgment on its breach of contract claim, arguing that the undisputed evidence renders Carew liable for payments owed in connection with seventy-three international shipments.  For the reasons that follow, the Court denies Carew's motion to dismiss or transfer largely because of a forum selection clause in the shipment documentation that places venue in this District.  The Court also grants Maersk's motion for summary judgment in part and denies it in part.  The Court grants summary judgment in favor of Maersk on its breach of contract claim with respect to all allegedly invoiced but unpaid charges, except for the "prepaid" freight charges.  The current record precludes summary judgment as to whether Carew has in fact paid those freight charges.

---

Dkt. 76 ("Deft. Opposition") at 6.  And indeed, Mr. Omole has repeatedly sought to assist Carew throughout this litigation, including during at least one court proceeding (yet has opted not to seek *pro hac vice* admission).  *See* Dkts. 20, 27, 29, 36, 37, 42, 72, 81.  Accordingly, Carew is not entitled to have the Court liberally construe her filings in support of her motion and in opposition to Maersk's to raise the strongest arguments they suggest, as normally would be afforded to *pro se* litigants.  *See, e.g.*, *CIT Grp./Com. Servs., Inc. v. Prisco*, 640 F. Supp. 2d 401, 407 (S.D.N.Y. 2009) ("Allowing the Defendant to have the benefit of the liberal pleadings standard of pro se parties when he had the assistance of counsel[] would be fundamentally unfair.").

# I. Background

## A. Facts[2]

Maersk is a Danish international cargo carrier.  *See* Dkt. 56 ("Am. Complaint") ¶ 2; Pl. 56.1 Stmt., Exh. 4 ("Service Contract") at 1.  Holiday Shipping—the name that Carew operates under—is a non-vessel-operating ocean common carrier ("NVOCC") based in Georgia.  Am. Complaint ¶ 3; Deft. Motion, Exh. A ("Carew Affidavit") ¶¶ 1-3, 5. Carew "manage[s] and direct[s] all activities of Holiday Shipping."   Carew Affidavit ¶ 2. "An NVOCC acts as a middleman between shippers and ocean common carriers that arranges for shippers the

---

[2] The Court pauses to explain the materials it has considered and the weight given to those materials in assessing the parties' dueling motions.  First, for Carew's motion to dismiss on venue grounds, the Court "draw[s the facts] from the complaint and the affidavits" and "construe[s them] in the light most favorable to" Maersk.  *Martinez v. Bloomberg LP*, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007)), *aff'd* 740 F.3d 211 (2d Cir. 2014).

In resolving Maersk's motion for summary judgment, the Court draws the facts from Maersk's statement of material facts pursuant to Southern District of New York Local Civil Rule 56.1, Dkt. 64 ("Pl. 56.1 Stmt."), Carew's counter-statement pursuant to Rule 56.1, Dkt. 81 ("Deft. 56.1 Stmt."), and the declarations and exhibits submitted by the parties.  Maersk's Rule 56.1 statement consists of a sworn declaration by Lou Palazzo, the Accounts Receivable Process and Accounts Manager for Maersk Agency U.S.A., Inc., Pl. 56.1 Stmt. ¶ 1, with various exhibits attached, *see generally id.*, Exhs. 1-5.  Carew's response pursuant to Rule 56.1 is a sworn statement that she has signed.  Deft. 56.1 Stmt.  Her statement, however, does not comply with Rule 56.1 because it does not have "correspondingly numbered paragraph[s] responding to each numbered paragraph in the statement of" Maersk, and it often fails to cite admissible evidence refuting Maersk's Rule 56.1 statement.  S.D.N.Y. Local Civ. R. 56.1(b), (d); *see also* Dkt. 63 (Notice To Pro Se Litigant Who Opposes a Motion for Summary Judgment); Dkt. 66 (Declaration of Service of Notice to Pro Se Litigant and other filings in support of summary judgment).  Accordingly, statements in Maersk's 56.1 Statement supported by admissible evidence and not refuted by admissible evidence offered by Carew are deemed admitted.  *See* S.D.N.Y. Local Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.").  To be clear, the Court has confirmed that any assertions relied on from Maersk's Rule 56.1 statement are amply supported by the record.  *See, e.g.*, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) (explaining that if "the record does not support the assertions in a Local Rule 56.1 statement, those assertions should be disregarded and the record reviewed independently").

transportation of cargo aboard a vessel." *MSC Mediterranean Shipping Co. SA v. Airlift Marine Servs. PVT Ltd.*, No. 18 Civ. 10788 (JPC), 2022 WL 123589, at *1 (S.D.N.Y. Jan. 13, 2022) (quotation, citation, and alteration omitted).

Maersk and Holiday Shipping entered into a Service Contract, which set terms for Maersk's carriage of goods for Holiday Shipping. *See generally* Service Contract.[3]  Among other things, the Service Contract obligated Holiday Shipping to "pay [Maersk] amounts required under the [Service] Contract or [Maersk]'s Transport Document upon receipt of an invoice" without "further documentation." *Id.* § 4.  The Service Contract contained a choice of law and forum selection clause in the event of disputes between Maersk and Holiday Shipping:

> The Contract shall be governed by and construed in accordance with English law and all disputes arising hereunder shall be determined by the English High Court of Justice in London to the exclusion of the jurisdiction of the courts of another country.  Alternatively and at [Maersk]'s sole option, [Maersk] may commence proceedings against [Holiday Shipping] at a competent court of a place of business of [Holiday Shipping].

*Id.* § 11.  The Service Contract also provided, however, that "in the event any provision in [Maersk]'s Transport Document limit[ing] or govern[ing] its liability for damages to persons or property (including cargo), delays, [or] misdelivery" conflicts with the Service Contract, "or any other provision of the Transport Document mandated by applicable law is . . . in conflict with the [Service] Contract, the Transport Document shall prevail." *Id.* § 2.  Maersk's "bill of lading . . . or sea waybill" qualified as such a "Transport Document" under the Service Contract.  *Id.* § 1.

---

[3] Under the Service Contract, Maersk was the "Carrier," the "Shipper" was the "party appearing as shipper on any applicable Transport Document," and the "Merchant" included the "Shipper."  Service Contract § 1.  Holiday Shipping was the designated the "Shipper" under the Transport Documents at issue in this case, *see, e.g.*, Pl. 56.1 Stmt., Exh. 2 ("Transport Documents") at 1, 7, and thus was both a Shipper and a Merchant for purposes of the Service Contract.

As anticipated, Maersk and Holiday Shipping entered into various agreements for Maersk to carry shipping containers across the Atlantic Ocean from American to African ports. The Transport Documents—which covered seventy-three such shipments—had "received for shipment" dates of between November 15, 2015 and September 10, 2018. *See* Transport Documents. Some of the Transport Documents were identified as bills of lading, *see, e.g.*, *id.* at 7, while others were identified as sea waybills, *see, e.g.*, *id.* at 1. A bill of lading is a document issued by a carrier, like Maersk, to a shipper, like Holiday Shipping. *See MSC Mediterranean Shipping Co. S.A.*, 2022 WL 123589, at *1. "Bills of lading record that a carrier has received goods from the party that wishes to ship them, state the terms of carriage, and serve as evidence of the contract for carriage." *Saray Dokum ve Madeni Aksan Sanyani Turizm A.S. v. MTS Logistics, Inc.*, No. 17 Civ. 7495 (JPC), 2021 WL 1199470, at *1 (S.D.N.Y. Mar. 30, 2021) (cleaned up). While bills of lading may appear in both negotiable and non-negotiable forms, the bills of lading in this case are non-negotiable. *See* Deft. 56.1 Stmt. ¶ 3; Dkt. 77 ("Second Palazzo Decl.") ¶ 4; Transport Documents at 7 (noting that to be negotiable, the bill of lading must list the consignee in a particular way, which was not done on the Transport Documents). A sea waybill is "basically the same as a non-negotiable bill of lading in the United States." Chester D. Hooper, *Carriage of Goods and Charter Parties*, 73 Tul. L. Rev. 1697, 1728 (1999).

The reverse sides of the Transport Documents were the same for all the documents relevant to this case, and featured Maersk's Terms for Carriage. Pl. 56.1 Stmt. ¶ 3; *id.*, Exh. 3 ("Terms for Carriage"); Carew Affidavit ¶ 8. Like the Service Contract, the Terms for Carriage also contained a choice of law and forum selection clause:

> For shipments to or from the U.S. any dispute relating to this bill of lading shall be governed by U.S. law and the United States Federal Court of the Southern District of New York is to have exclusive jurisdiction to hear all disputes in respect thereof. In all other cases, this bill of lading shall be governed by and construed in

accordance with English law and all disputes arising hereunder shall be determined by the English High Court of Justice in London to the exclusion of the jurisdiction of the court of another country.  Alternatively and at [Maersk]'s sole option, [Maersk] may commence proceedings against [Holiday Shipping] at a competent court of a place of business of [Holiday Shipping].

Terms for Carriage § 26.

Also like the Service Contract, the Terms for Carriage obligated Holiday Shipping to pay Maersk for the trans-Atlantic carriage.  "All sums payable to [Maersk] [were] due on demand" and "in full."  *Id.* § 16.3.  The freight was to "be paid without any set off, counter claim, deduction or stay of execution."  *Id.* § 16.5.  Even if Maersk accepted directions from Holiday Shipping "to collect Freight, duties, fees, demurrage/detention and costs and expenses" from another party, if the third party failed to pay, "[Holiday Shipping] . . . remain[ed] responsible for [such amounts] . . . o[n] demand."  *Id.* § 16.7.  All "Merchant[s]," including Holiday Shipping as the Shipper,[4] were "jointly and severally liable to [Maersk] for the due fulfillment of all obligations undertaken by the Merchant."  *Id.* §§ 1, 15.1.  And the Terms for Carriage also obligated "[Holiday Shipping to] comply with all regulations or requirements of customs, port and other authorities," and to "bear and pay all duties, taxes, fines, imposts, expenses or losses . . .  incurred or suffered by reason of any failure to" do so.  *Id.* § 15.3.

Maersk invoiced Holiday Shipping for various charges related to the seventy-three shipped containers, including "basic ocean freight, detention, demurrage, *per diem* charges, inland haulage, low Sulphur surcharges, congestion fees, shifting expenses, bunker fees, port dues, documentation fees, and associated and incidental customs duties, fees, taxes, costs, charges, and expenses accrued on the containers."  Pl. 56.1 Stmt. ¶ 6; *see also id.*, Exh. 5 ("Invoices").  "In maritime

---

[4] The Terms for Carriage listed the "Merchant" as including the "Shipper."  Terms for Carriage § 1.  Thus, Holiday Shipping was also both a Shipper and a Merchant under the relevant waybills and bills of lading.

parlance, freight is the compensation which the shipowner is to receive for carrying the goods." *Energy Transp., Ltd. v. Sebastian*, 269 F. Supp. 2d 416, 417 n.1 (S.D.N.Y. 2003) (quotation omitted). Demurrage is a type of charge for delays. *See Demurrage*, *Black's Law Dictionary* (11th ed. 2019). Payment on the Invoices was due at various times between November 24, 2015 and October 8, 2018. *See* Invoices. Each Invoice listed the bill of lading and container numbers for the shipments justifying the charges and the calculations underlying the charges. Pl. 56.1 Stmt. ¶ 7; Invoices.

In a declaration submitted by Maersk in support of summary judgment, Palazzo attests that Carew did not pay invoiced charges totaling $146,313.00. Pl. 56.1 Stmt. ¶¶ 9-10. Carew does not dispute that these charges were invoiced. But she claims that the detention and demurrage charges may have been "due to the failures of other intermediaries, such as truckers, marine terminal operators, and off-terminal facilities." Deft. 56.1 Stmt. ¶ 7. In particular, Carew claims that "Maersk . . . refused to establish and delineate the periods when each of the containers went through government inspections." *Id.* Carew additionally insists that the practice of the parties was "for Maersk to receive the 'prepaid' charges from [Carew] and to receive the 'collect' portion from the Consignees [*i.e.*, Carew's customers receiving the goods] at the destination port," but she "does not know if Maersk received any money from any of the Consignees at the destination port." *Id.* ¶ 6.[5] To that end, Carew maintains that she paid the freight charges, a subset of the total charges

---

[5] Carew's Opposition, with little explanation, claims that Maersk and Carew settled demurrage and detention charges related to eighteen bills of lading. Deft. Opposition ¶ 10. Maersk responded with a supplemental declaration from Palazzo attesting that those eighteen invoices are not among the ones at issue in this case. Second Palazzo Decl. ¶ 9. Carew submitted payment records to support the same argument when opposing a prior motion for summary judgment in this case. *See* Dkt. 26, Exh. D. "While the Court need consider only the materials cited by the parties, it may consider any other materials in the record in deciding a motion for summary judgment." *Pest v. Bridal Works of N.Y., Inc.*, 268 F. Supp. 3d 413, 422 (E.D.N.Y. 2017).

invoiced, and that Maersk's Transport Documents are proof of that payment. *Id.* On the waybills, certain charges appear in a column labeled "prepaid," while others appear in a column marked "collect." *See, e.g.*, Transport Documents at 1 (capitalization removed). The bills of lading bear the phrase "freight prepaid." *See, e.g.*, *id.* at 7 (capitalization removed). Palazzo disagrees with Carew's view of the significance of these terms in the Transport Documents, contending that "freight prepaid" "simply reflect[ed] that freight [was] payable at origin," not that the payments "ha[d] actually been received," and maintains that Carew did not in fact pay those freight charges. Second Palazzo Decl. ¶ 2.

## B.  Procedural History

Maersk filed suit on May 24, 2019, Dkt. 1, and the case was assigned to the Honorable John G. Koeltl. Maersk then moved for summary judgment on October 18, 2019, Dkt. 14, and Carew moved to dismiss on October 28, 2019, Dkt. 20. Judge Koeltl denied both motions without prejudice on July 27, 2020. Dkt. 29. On September 29, 2020, the case was reassigned to the undersigned.

---

Some of the allegedly settled invoices relate to bills of lading that are not actually at issue in this litigation. *Compare* Carew Opposition ¶ 10 (listing settlements relating to bills of lading 957849167, 960739844, and 962479448) *with* Transport Documents (not including those bills of lading). And while Carew proffered evidence of certain payments in connection with shipments that *are* at issue in this litigation, that evidence does not show payments on the specific invoices that Maersk seeks to collect. Instead, Carew's evidence evinces payments on different invoices related to the same shipments. *Compare, e.g.*, Dkt. 26, Exh. D at 1 (recording a payment of $1,510 on invoice number 5251906436, issued on December 14, 2016, related to bill of lading number 958632718) *with* Invoices at 22 (recording a charge of $960 on invoice number 5252006705, issued on January 11, 2017, related to bill of lading number 958632718); Dkt. 26, Exh. D at 3 (recording a payment of $3,400 on invoice number 5251949559, issued on December 27, 2016, related to bill of lading number 958706912) *with* Invoices at 21 (recording a charge of $700 on invoice number 5251974144, issued on January 2, 2017, related to bill of lading number 958706912). Carew's evidence of prior payments is thus not relevant to the issues to be resolved in this case.

Carew moved to dismiss again on December 4, 2020, Dkt. 40, and on December 30, 2020, Dkt. 48.  The Court denied both of Carew's motions as moot after granting Maersk leave to amend its complaint.  Dkt. 55.  Maersk filed its Amended Complaint on February 8, 2021.  The Amended Complaint brings four claims—breach of contract, failure to pay an account stated, unjust enrichment, and *quantum meruit*—all stemming from Carew's alleged failure to pay charges linked to Maersk's transportation of the seventy-three containers.  Am. Complaint ¶¶ 6-20.

The parties each filed motions on March 26, 2021.  Carew moved to dismiss or transfer the case to the Northern District of Georgia or the Federal Maritime Commission pursuant to Federal Rule of Civil Procedure 12(b)(3), with accompanying exhibits.  Deft. Motion, Exhs. A-H.[6]  Maersk filed a brief in opposition on April 9, 2021, Dkt. 68 ("Pl. Opposition"), and Carew filed a reply brief on April 14, 2021, Deft. Reply.[7]  Maersk moved for summary judgment, seeking judgment on liability as to its breach of contract claim, damages, and prejudgment interest.  Dkt. 62; Dkt. 63 ("Pl. Motion"); Pl. 56.1 Stmt.[8]  Carew filed a brief in opposition on April 15, 2021, attaching exhibits.  Dkt. 74; Deft. Opposition, Exhs. A-E.  Maersk filed a reply brief and supplemental affidavit in further support of its motion for summary judgment on April 30, 2021, Dkt. 78 ("Pl. Reply"); Second Palazzo Decl., following which Carew filed a belated Rule 56.1 counter statement on May 7, 2021, Deft. 56.1 Stmt.

---

[6] Although Carew's motion is captioned as also brought pursuant to Federal Rule of Civil Procedure 12(b)(7), it does not allege any failure to join a necessary party.

[7] While Carew captioned her Reply as a "Supplemental Motion to Dismiss," it offers arguments in further support of her previously filed motion to dismiss or transfer venue.

[8] Though Maersk's motion does not expressly address the topic, Maersk appears to only move for summary judgment on its first cause of action for breach of contract.  Accordingly, the Court does not address Maersk's three other causes of action in this Opinion and Order.

## II.  Rule 12(b)(3) Motion

The Court begins with Carew's motion to dismiss or transfer venue because if she were to prevail on that motion, another court would need to decide the merits.  As discussed below, however, the forum selection clause in the Terms for Carriage makes venue proper in the Southern District of New York.

### A.  Venue

#### 1.  Legal Standard

Carew argues that Maersk's choice of venue in this District violates both the special venue principles applicable to admiralty cases and the doctrine of *forum non conveniens*.  Deft. Motion ¶¶ 25, 28.  The parties agree that the case lies within the Court's admiralty jurisdiction.  *See* Am. Complaint ¶ 1; Deft. Motion ¶ 25.  "Admiralty proceedings are governed by their own distinctive rules of venue, unhampered by statute."  14D Charles A. Wright *et al.*, Fed. Prac. & Proc. § 3817 (4th ed. 2021); *see also Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 374 (W.D.N.Y. 2018).  In *in personam* admiralty cases, "personal jurisdiction and venue analyses merge so that venue is proper in any district in which valid service of process may be had on the defendant."  *Hovensa LLC v. Kristensons-Petroleum, Inc.*, No. 12 Civ. 5706 (SAS), 2013 WL 1803694, at *3 (S.D.N.Y. Apr. 26, 2013) (quoting *Ziegler v. Rieff*, 637 F. Supp. 675, 677-78 (S.D.N.Y. 1986)); *see also Gipromer v. SS Tempo*, 487 F. Supp. 631, 633 (S.D.N.Y. 1980).

Maersk argues that the forum selection clause in the Terms for Carriage establishes personal jurisdiction over Carew in the Southern District of New York.  Pl. Opposition at 2. "Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006); *see also Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).  "Where an agreement contains

a valid and enforceable forum selection clause, it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Wynn Las Vegas, LLC*, 509 F. Supp. 3d 38, 48 (S.D.N.Y. 2020) (quotations and alteration omitted).

"To determine whether a forum selection clause is valid and enforceable, courts consider: (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., whether the parties are required to bring any dispute to the designated forum or are simply *permitted* to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause." *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 342-43 (S.D.N.Y. 2020) (quotations and alterations omitted). "If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable, and a party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 343 (quotations and alteration omitted); *see also Phillips*, 494 F.3d at 383-84.

## 2. Analysis

The parties do not dispute the first two factors: the relevant forum selection clauses were communicated and mandatory.[9]  *See generally* Pl. Opposition; Deft. Reply.  Instead, the parties

---

[9] While the forum selection clauses of the Service Contract and the Terms for Carriage each require the dispute to be brought in one forum, with Maersk retaining rather than exclusive right to bring suit in a court where Carew does business, the clauses are nevertheless mandatory. *See Tesoro, Inc., v. Formosa Container Line, Inc.*, No. 09 Civ. 2083 (DSF), 2008 WL 11338715, at *3 (C.D. Cal. Sept. 4, 2008) (explaining that a clause placing disputes in Singapore, unless the freight carrier chose the Southern District of New York instead, was mandatory rather than permissive); *Graham Const. Servs., Inc. v. Adventure Divers, Inc.*, No. 11 Civ. 3414 (MJD) (AJB), 2012 WL 1365729, at *4 (D. Minn. Mar. 27, 2012) (concluding that a forum selection clause was mandatory

11

dispute which forum selection clause applies—the one in the Service Contract or the one in the Terms for Carriage—and, assuming the latter applies, whether Maersk's claims against Carew fall within the scope of the Terms for Carriage's clause.

To start, the forum selection clauses of the Service Contract and the Terms for Carriage conflict. The Service Contract placed jurisdiction exclusively in the English High Court of Justice, and required the application of English law, unless Maersk sued in a competent court at Holiday Shipping's place of business. Service Contract § 11. Meanwhile, the Terms for Carriage placed jurisdiction to hear all disputes relating to its corresponding bill of lading concerning shipments to or from the United States in the United States District Court for the Southern District of New York, with application of U.S. law, unless Maersk chose to sue in Holiday Shipping's place of business. Terms for Carriage § 26. Since there is no suggestion that Holiday Shipping had a place of business in this District, Maersk's suit could be brought here only under the Terms for Carriage, not the Service Contract.

To be sure, a service contract and a bill of lading could require suit in different forums without a conflict if their respective forum selection clauses govern non-overlapping types of claims. For example, parties could agree that disputes over rates arise exclusively out of the service contract, while disputes over damages to freight or delays in delivery arise exclusively out of the bill of lading. *See, e.g.*, *Calchem Corp. v. Activsea USA LLC*, No. 06 Civ. 1585 (CPS), 2007 WL 2127188, at *3 n.13 (E.D.N.Y. Jul. 24, 2007); *Regal-Beloit Corp. v. Kawasaki Kisen Kaisha, Ltd.*, 462 F. Supp. 2d 1098, 1105 (C.D. Cal. 2006), *aff'd* 620 F.3d 1167, 1168 (9th Cir. 2010). In such situations, each document's choice-of-forum clause would regulate that document's type of claim,

---

even though "it specifie[d] two potential venues for [the plaintiff] to choose between, rather than one exclusive forum"), *report and recommendation adopted by* 2012 WL 1366311 (D. Minn. Apr. 19, 2012).

without overlap or inconsistency.  *See Calchem Corp.*, 2007 WL 2127188, at *3 n.13; *Regal-Beloit Corp.*, 462 F. Supp. 2d at 1105.  But that is not the case here.  Maersk alleges that Carew breached both the Service Contract and the Transport Documents for the same reason: by failing to pay invoices as required under both agreements.  This case thus both "aris[es] []under" the Service Contract, Service Contract § 11, and "relate[s] to th[e] bill of lading," Terms for Carriage § 26, generating a conflict between those documents' forum selection clauses.

But fortunately, the Service Contract contemplated this very scenario.  The Service Contract directed that if "any provision in [Maersk]'s Transport Document limit[ing] or govern[ing] its liability for damages to persons or property (including cargo), delays, [or] misdelivery . . .  is . . . in conflict with the [Service] Contract, the Transport Document shall prevail."  Service Contract § 2.  The choice-of-forum clauses in the Service Contract and the Terms for Carriage both govern the scenarios under which Maersk could face liability in connection with shipments.  While Carew has not counterclaimed against Maersk, her principal arguments include that Maersk, rather than her, should bear the costs of delays in shipping.  *See* Deft. Opposition at ¶¶ 3, 5-6.  Thus, under the Service Contract, the Terms for Carriage's forum selection clause controls.[10]

Carew raises three arguments against applying the Terms for Carriage's forum selection clause.  To start with the broadest, Carew argues that the sea waybills and bills of lading, with their accompanying Terms for Carriage, are not contracts, but receipts.  Deft. Motion ¶¶ 20-22.  Even

---

[10] Even without this language in the Service Contract, the Terms for Carriage's forum selection clause still would prevail.  When a service contract and a later-issued, binding waybill or bill of lading "contain[] the same subject matter," and "the forum selection clause in the way bill" "postdate[s] and is flatly inconsistent with that in the service contract," the clause in the bill "supersede[s]" the clause in the service contract, absent a provision to the contrary.  *TMC Co., Ltd. v. M/V Mosel Bridge*, No. 01 Civ. 9860 (LAK), 2002 WL 1880722 at *2 (S.D.N.Y. Aug. 15, 2002); *see also Calchem Corp.*, 2007 WL 2127188, at *3 n.15 (same).

if the waybills and bills of lading would ordinarily be mere receipts—a question which the Court does not reach—whether "a bill of lading is a mere receipt . . . [is] subject to contractual modification by the parties." *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 823 (2d Cir. 2006) (quotations omitted).  The Service Contract provided that Maersk's "Terms for Carriage . . . apply to all individual shipments under this Contract," and expressly contemplated that the Transport Documents, including the Terms for Carriage, may override certain provisions of the Service Contract.  Service Contract § 2.  Carew's assent to the Terms for Carriage and the role of the Transport Documents in relation to the Service Contract means that the Transport Documents did not "*unilaterally* alter[]" the previously agreed terms.  *Asoma Corp.*, 467 F.3d at 823; *see also Eastern Fish Co. v. South Pacific Shipping Co., Ltd.*, 105 F. Supp. 2d 234, 239 n.7 (S.D.N.Y. 2000) (noting that a clause in a service contract favoring a bill of lading in the event of a conflict indicated that the bill of lading was a contract).

Carew next contends that the detention and demurrage charges do not "relat[e] to [the] bill of lading," and thus fall outside the scope of the New York forum selection clause, because those charges were invoiced separately from the bills of lading.  Deft. Motion ¶¶ 11-12, 18.  But the Terms for Carriage's forum selection clause covered "any dispute relating to" that bill of lading and "all disputes in respect thereof."  Terms for Carriage § 26.  And Maersk has sued for a breach of the bills of ladings' Terms for Carriage, specifically the requirement that Holiday Shipping pay "sums payable to [Maersk] . . . on demand."  Terms for Carriage § 16.3; *see* Am. Complaint ¶¶ 7-9.  A claim for breach of contract is of course a dispute "relating to" the underlying contract.  Terms for Carriage § 26.

Carew finally argues that because not all the disputed charges are for freight, the charges are not for "shipments to or from the U.S.," and accordingly do not come under the New York

forum selection clause.  Deft. Motion ¶¶ 23-24 (emphasis removed).  But all the charges, of whatever type, were incurred during journeys between the United States and African ports.  And nothing in the Terms for Carriage's choice-of-forum clause indicated that it solely applied to freight expenses, not other charges incurred on shipments.  *See* Terms for Carriage § 26.

Thus, Carew had notice of, and was subject to, a mandatory forum selection clause designating this District as the proper venue for this litigation.  Because Carew raises no other reason why enforcement of the clause would be "unreasonable or unjust," or constitute "fraud or overreach," the clause is enforceable.  *NuMSP, LLC*, 462 F. Supp. 3d at 342-43.  As such, personal jurisdiction over Carew exists in this District, and Carew's arguments stemming from her and Holiday Shipping's lack of contacts with New York under a conventional personal jurisdiction analysis are not relevant.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 509 F. Supp. 3d at 48.  And with personal jurisdiction existing, venue is proper.  *See Hovensa LLC*, 2013 WL 1803694, at *3.

## B. *Forum Non Conveniens*

The Terms for Carriage's forum selection clause also dispenses of Carew's request for a venue transfer on *forum non conveniens* grounds.  *See* Deft. Motion ¶ 28.  "The *forum non conveniens* doctrine is 'a discretionary device that permits a court in rare instances to dismiss a claim even if the court is a permissible venue with possible jurisdiction.'"  *Accent Delight Int'l Ltd. v. Sotheby's*, 394 F. Supp. 3d 399, 408 (S.D.N.Y. 2019) (quoting *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004)).  Ordinarily, a court first examines the plaintiff's choice of forum, followed by the adequacy of the defendant's alternative, before balancing the public and private interests at stake.  *See id.* (citing *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005)).

But when a valid forum selection clause is in place, courts apply a modified version of the *forum non conveniens* analysis, under which the "clause should be 'given controlling weight in all but the most exceptional circumstances.'" *Lvar, L.P. v. Berm Comm. Bank Ltd.*, 649 F. App'x 25, 26 (2d Cir. 2016) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013)). If a plaintiff sues in the agreed-upon forum, a defendant's assent to that forum selection clause "waive[s] the right to challenge the preselected forum as inconvenient." *Id.* at 26-27 (quoting *Atl. Marine Constr. Co.*, 771 U.S. at 63-64). In such a situation, a court thus "deem[s] the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine Constr. Co.*, 571 U.S. at 64. "As a consequence, a district court may consider arguments about public-interest factors only." *Id.*

Carew cites only her private interest in arguing for dismissal based on *forum non conveniens*. *See* Motion ¶ 28. Because that factor carries no weight here, Carew's motion to dismiss or transfer for *forum non conveniens* is denied as well.

### III.  Motion for Summary Judgment

Having determined that venue is proper in this District, the Court turns to the merits of Maersk's motion for summary judgment on its breach of contract claim. While the Court agrees that summary judgment is appropriate with respect to certain charges owed to Maersk, disputed material facts remain as to whether Carew has paid freight charges listed in the Invoices.

#### A.  Legal Standards

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might affect the outcome of the suit

under the governing law.'" *Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). "The movant bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,' and if satisfied, the burden then shifts to the non-movant to present 'evidence sufficient to satisfy every element of the claim.'" *Chen*, 2019 WL 1244291, at *4 (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)).

In opposing summary judgment, the non-movant "may not rely on conclusory allegations or unsubstantiated speculation," and "must offer some hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quotations omitted). "The mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quotations omitted).

To recover for breach of contract in a maritime case, a plaintiff must prove "(1) the terms of a maritime contract; (2) that the contract was breached; and (3) the reasonable value of damages." *Cal Dive Offshore Contractors, Inc. v. M/V Samson*, 245 F. Supp. 3d 473, 479 (S.D.N.Y. 2017) (quotations omitted). "[C]ontracts for carriage of goods by sea must be construed like any other contracts: by their terms and consistent with the intent of the parties." *Norfolk S.*

*Ry. Co. v. Kirby*, 543 U.S. 14, 31 (2004); *see also APL Co. Pte. Ltd. v. Kemira Water Solutions, Inc.*, 890 F. Supp. 2d 360, 366 (S.D.N.Y. 2012) (looking to federal "common law principles of contract formation and interpretation" (quotations omitted)).

## B. Analysis

### 1. Carew's Obligation to Pay the Invoices

The Court begins with the scope of Carew's obligation to pay Maersk. The express terms of both the Service Contract and the Terms for Carriage required Carew to pay Maersk's invoices on demand. The Service Contract obligated Holiday Shipping to "pay [Maersk] amounts required under the [Service] Contract or [Maersk]'s Transport Document upon receipt of an invoice" without "further documentation." Service Contract § 4. And the Terms for Carriage likewise required Carew to pay "sums payable to [Maersk] . . . on demand." Terms for Carriage § 16.3. So after receiving an invoice, Carew had to pay Maersk before she could dispute any charges. *See Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 282 (2d Cir. 1986) (explaining that a freight clause providing that "freight . . . shall be payable without discount on delivery" required payment of a "freight bill promptly upon delivery . . . [without] asserting a claim in abatement or set-off"); *see also Shelter Forest Intl. Acquisition, Inc. v. COSCO Shipping (USA) Inc.*, 511 F. Supp. 3d 1118, 1125-26 (D. Or. 2021) (explaining that a "dispute concerning . . . responsib[ility] for the damage to . . . [the] cargo [was] immaterial because both the parties' underlying agreements and federal maritime law make clear that [the receiver] must accept delivery . . . and pay all costs without offset (and regardless of whether [the receiver] has its own claim for damages)").

Carew argues that her obligation to pay did not extend to certain demurrage and detention charges that Maersk seeks to collect, because such charges are unenforceable under 46 U.S.C.

§ 41102(c), a provision of the Shipping Act, and its implementing regulations.   *See* Deft. Opposition ¶¶ 3-6, 9.  The statute requires "common carrier[s] . . . to establish, observe, and enforce just and reasonable regulations and practices relating to . . . receiving, handling, storing, or delivering property."   46 U.S.C. § 41102(c).   On May 18, 2020, the Federal Maritime Commission issued a rule interpreting the statute for demurrage and detention charges.   *See* Interpretive Rule on Demurrage and Detention Under the Shipping Act, 46 C.F.R. § 545.5.  The rule explained, *inter alia*, that when considering the reasonableness of detention and demurrage charges, the Commission would "consider the extent to which" the charges "promote freight fluidity," as well as "the existence, accessibility, content, and clarity of policies," such as whether they have "clearly defined . . . terms."  *Id.*

Carew's argument fails for two reasons.  First, Carew points to no evidence or grounds for why Maersk's collection of the invoiced demurrage and detention charges would violate the Shipping Act or the May 2020 rule, and instead just relies on conclusory statements to that effect. *See* Deft. Opposition ¶¶ 3-6, 9; Deft. 56.1 Stmt. ¶¶ 5, 7.  Second, even if Carew could offer such evidence, "the Shipping Act does not provide for a cause of action in federal district court; rather, alleged violations of the Shipping Act must be addressed with the Federal Maritime Commission." *Mediterranean Shipping Co. USA Inc. v. AA Cargo Inc.*, 46 F. Supp. 3d 294, 301 (S.D.N.Y. 2014); *see also MAVL Cap., Inc. v. Marine Transp. Logistics, Inc.*, 130 F. Supp. 3d 726, 730 (E.D.N.Y. 2015).

### 2. Carew's Payments on the Invoices

Carew does not dispute that Maersk invoiced her for $146,313 in charges in connection with the seventy-three shipments.  Pl. 56.1 ¶ 6; Deft. 56.1 ¶¶ 3, 6, 10; *see* Invoices.  Because Carew was obligated to pay those Invoices, the remaining question is whether she did so.  Maersk contends that Carew failed to pay all the Invoices.  *See* Maersk 56.1 Stmt. ¶¶ 9-10.  Carew responds with two separate arguments, each focused on the type of charges invoiced.  First, Carew contends that she in fact did pay the freight charges.  And second, as to the other charges, she seems to argue that she was not responsible for paying them.

Starting with the freight charges, Carew points to the bills of lading as "represent[ing] proof of payment," as they referenced those charges as "prepaid," and she insists that Maersk issued those bills after Maersk "received [the] freight payment."  Deft. Opposition ¶ 2; *see id.* ¶ 8 ("Maersk's bill of lading . . . indicates that Defendant prepaid freight charges."); *id.*, Exh. A ("Second Carew Affidavit") ¶ 7 (Carew stating that Maersk's "bill of lading represents proof of payment . . . as this was the only document Plaintiff issues after it receives freight"; "Holiday Shipping prepaid all freight . . . charges before [Maersk] issued its bill of lading"; and "Holiday Shipping does not owe any money under any of [Maersk]'s bills of lading"); *see also* Deft. 56.1 Stmt. ¶ 4 ("Maersk does not give a bill of lading without collecting freight charges, and each bill of lading is a receipt of payment for freight.").  She further contends that "[t]he agreement and pattern of conduct between [the parties] w[as] for Plaintiff to collect the 'prepaid' charges from Defendant and the[n] 'collect' charges from Consignees at the destination port."  Second Carew Affidavit ¶ 7; *see* Deft. 56.1 Stmt. ¶ 6 (describing this practice).  In contrast, Palazzo attests on behalf of Maersk that "[t]he words 'Freight Prepaid' on M[aersk]'s Bills of Lading simply reflect that freight is payable at origin; they do not mean that the freight has actually been received."

Second Palazzo Decl. ¶ 2.  Palazzo further maintains that "[t]he ocean fright claimed by M[aersk] in this lawsuit has not been tendered."  *Id.*

Maersk points to ample caselaw where courts found that a "freight prepaid" notation appearing on a bill of lading need not release liability absent an indication of release from the ocean carrier.  Maersk Reply at 2-4; *see, e.g.*, *Nat'l Shipping Co. of Saudi Arabia v. Omni Lines, Inc.*, 106 F.3d 1544, 1545 (11th Cir. 1997) (describing "testi[mony] that marking a bill of lading 'freight prepaid' is a way of indicating that the freight will be paid at the point where the cargo is loaded, not the point of delivery"); *CMA-GMG (Canada), Inc. v. World Shippers Consultants, Ltd.*, 921 F. Supp. 2d 1, 5-6 (E.D.N.Y. 2013) (finding that "[a] notation of 'freight prepaid' does not necessarily mean that the freight has been paid to the carrier"); *ASA Mgmt. Corp. v. IADC, Inc.*, No. 08 Civ. 3488 (ARR) (ERR), 2009 WL 2208083, at *2 (E.D.N.Y. Jul. 20, 2009) (crediting testimony that freight "'prepaid' language . . . indicate[d] that [the counterparty] was . . . responsible for the freight charges, not that [it] had already paid"); *Sea-Land Serv., Inc. v. H. Bros. Corp.*, No. 84 Civ. 628 (GLG), 1985 WL 2031, at *2 (S.D.N.Y. July 17, 1985) (explaining that notation "freight pre-paid" "stamped on the bills of lading is not a receipt that the freight charges have actually been paid but only means that the shipper will pay the charges at a later date").

But notably, all those decisions occurred in the context of a bench trial or a default judgment hearing, not a contested motion for summary judgment.  Neither party has submitted evidence of the meaning of "Freight Prepaid," or the parties' practices regarding the designation, beyond Carew's general claim that the "pattern of the conduct between the Parties w[as] for Maersk to receive the 'prepaid' charges from [Carew]," Deft. 56.1 Stmt. ¶ 6, and Palazzo's unsubstantiated assertion that "[t]he words 'Freight Prepaid' on M[aersk]'s Bills of Lading simply reflect that freight is payable at origin; they do not mean that the freight has actually been

received," Second Palazzo Decl. ¶ 2.  Nor does either party contend that the understanding of that term is so well-established and beyond reasonable dispute that the Court may take judicial notice of its meaning.  *See* Fed. R. Evid. 201(b).  Similarly, neither party provides evidence beyond their dueling affidavits as to whether Carew actually paid the freight charges.  Palazzo says no, *see* Second Palazzo Decl. ¶ 2; Pl. 56.1 Stmt. ¶¶ 9-10, and Carew says yes, Second Carew Affidavit ¶ 7; Deft. 56.1 Stmt. ¶ 6.  The issue of whether liability remains for any freight charges, including whether any such charges have been paid, thus remains in dispute and must be resolved at trial.

As for the other charges, which are listed "collect" rather than "prepaid" on the Transport Documents, Carew does not contend that she paid them but seems to take the position that she did not have to do so.  Carew contends that Maersk should have instead collected those charges "from the Consignees [*i.e.*, Carew's clients] at the destination port."  Deft. Opposition ¶¶ 2, 7; *see also* Second Carew Affidavit ¶¶ 7-8; Deft. 56.1 Stmt. ¶ 6 ("[Carew] does not know if Maersk received any money from any of the Consignees at the destination port.").  In other words, Carew argues that, before releasing the cargo to her clients, *i.e.*, the Consignees, Maersk should have collected the remaining unpaid charges from them.  Deft. Opposition ¶ 7.  But Carew cites no provision of the Transport Documents or the Service Contract that would have allowed Maersk to refuse to deliver the goods to the Consignees.  And more importantly, the Terms for Carriage expressly required Carew to pay Maersk in full on demand, Terms of Carriage § 16.3, and if a third party, such as the Consignees, failed to make a payment, Carew was responsible in full for that amount, *id.* § 16.7.  The Service Contract similarly required Carew to pay Maersk "upon receipt of an invoice" without "further documentation."  Service Contract § 4.  Maersk is therefore entitled to summary judgment as to Carew's liability to pay these non-freight charges.

## IV.  Conclusion

For the foregoing reasons, Carew's motion to dismiss or transfer is denied, and Maersk's motion for summary judgment is granted, except with respect to whether Carew remains liable for the "prepaid" freight charges.  The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 62, 67, 71, and 75.

Carew has not contested Maersk's entitlement to prejudgment interest.  *See* Deft. Opposition.  The Court will assess interest at the prime rate of 3.25%.  *See MSC Mediterranean Shipping Co. S.A.*, 2022 WL 123589, at *11; *Money Rates*, The Wall Street Journal, https://www.wsj.com/market-data/bonds/moneyrates (last visited Feb. 28, 2022).  Maersk shall make a submission proposing a calculation of damages and prejudgment interest on the resolved claims, including the appropriate dates to use for such a calculation, by March 11, 2022.  Carew shall oppose, if at all, by March 25, 2022.

The parties shall appear at a status conference on March 10, 2022 at 1:30 p.m. to schedule a trial date to resolve the remaining claims.  At the scheduled time, counsel for all parties should call (866) 434-5269, access code 9176261.


Dated: March 1, 2022
      New York, New York
                                          JOHN P. CRONAN
                             United States District Judge